IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:11-cv-24049-KMM

PHILIP MORRIS USA INC,

    Plaintiff,

vs.

ZHILIN JIANG, *et al.*,

    Defendants.
_____/

**ORDER GRANTING EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER**

THIS CAUSE came before the Court upon Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ("Plaintiff's *Ex Parte* Application") (ECF No. 7). UPON CONSIDERATION of the Motion, the pertinent portions of the Record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND[1]**

Plaintiff Philip Morris USA is the registered owner of numerous trademarks used in connection with the manufacture and distribution of cigarettes. Among these trademarks are trademarks associated with United States Patent and Trademark Office ("USPTO") No. 68,502, registered on April 14, 1908, and USPTO No. 938,510, registered on July 25, 1972 (collectively, "Philip Morris USA Marks"). Defendants are unknown individuals, residing in the People's Republic of China ("PRC"), who are believed to use, or assist others in using, the aliases "Lin

---

[1] The facts herein are taken from Plaintiff's Complaint (ECF No. 1) and Plaintiff's *Ex Parte* Application (ECF No. 7).

1

Wenquan," "Li Xiaodong," "Xiao Zhang," "Asdf Asd," "Asdfaasd Dfsh," "Asdfaasd Dsh," "Asdfaasd Ja," and "Wang Guobing."

Recently Plaintiff became aware of the potential sale of counterfeit versions of Plaintiff's products by Defendants. This is alleged to have been accomplished by Defendants through the operation of commercial Internet websites operating under domain names such as marlborocigarette.biz, marlboro-gold.biz, and marlborowholesale.com.[2] In response to Defendants' alleged trademark infringement, Plaintiff retained Investigative Consultants, a licensed private investigative firm, to investigate the sale of counterfeit versions of Plaintiff's products by Defendants.

From September 2011 through October 2011, Brandon Tanori, an employee of Investigative Consultants, purchased a number of cigarettes bearing the Philip Morris USA Marks at issue via the various Internet websites operated by Defendants. See Decl. of Brandon Tanori (ECF No. 7-12), at ¶¶ 4–16. Tanori was able to purchase these cigarettes using either Western Union (with a Money Transfer Control Number provided by Defendants), or Paypal. Id. Upon his receipt of the purchased goods, Mr. Tanori forwarded the products to Philip Morris USA's representative, Sissy S. Sawyer, for physical inspection. Id. Ms. Sawyer personally examined each carton—and at least one pack of cigarettes from each carton—and determined that the cartons and packs of what appeared to be Marlboro cigarettes were in fact counterfeit. See Decl. of Sissy S. Sawyer (ECF No. 7-2), at ¶¶ 16–17. Additionally, Ms. Sawyer reviewed and visually inspected the Internet websites operating under each of the Subject Domain Names, as well as pictures of items bearing the Philip Morris USA Marks offered for sale on the Internet

---

[2] The complete list of websites includes nearly sixty domain names. For a complete list, see Schedule A of this Order.

websites, and determined that the products were not genuine and/or authorized Philip Morris USA products. Id.

## II.  LEGAL STANDARD

In order to prevail on a motion for an *ex parte* temporary restraining order, Plaintiff must show that

> (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b).  "An *ex parte* restraining order is an extreme remedy only to be used with the utmost caution."  Levine v. Comcoa, Ltd., 70 F.3d 1191, 1194 (11th Cir. 1995).

Once the moving party meets the threshold requirements of Rule 65(b) to secure an *ex parte* temporary restraining order, Plaintiff must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest in order to obtain injunctive relief.  Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).

## III.  ANALYSIS

The declarations Plaintiff submitted in support of its Application for a temporary restraining order ("TRO") support the following conclusions of law:

1. Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or

distribution of cigarettes bearing counterfeits, reproductions, and/or colorable imitations of the Philip Morris USA Marks, and that the cigarettes Defendants are selling are copies of Plaintiff's cigarettes that bear copies of the Philip Morris USA Marks.

2. Because of the infringement of the Philip Morris USA Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted.

    a. Through the operation of nearly sixty commercial Internet websites Defendants are operating Internet businesses which advertise, promote, offer for sale, and sell, cigarettes bearing counterfeit and infringing trademarks in violation of Plaintiff's rights;

    b. There is good cause to believe that more counterfeit and infringing cigarettes bearing Plaintiff's trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these cigarettes; and that Plaintiff may suffer loss of sales for its genuine cigarettes;

    c. Given the ease with which Defendants may transfer and/or redirect commercial activity from one Internet Domain Name to another, there is good cause to believe that if Plaintiff proceeds on notice to Defendants on this Application for TRO, Plaintiff's ability to obtain meaningful relief will be thwarted;

    d. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded products if a TRO is issued is far outweighed by the potential harm to Plaintiff, its reputation and goodwill as a manufacturer of high quality products, if such relief is not issued; and

    e. The public interest favors issuance of the TRO in order to protect Plaintiff's trademark interests and the public from being defrauded by the palming off of counterfeit products as genuine products of Plaintiff.

3. Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of cigarettes bearing counterfeits and infringements of the Philip Morris USA Marks.

4. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 987 (11th Cir. 1995) (citing Fed. Trade Comm'n v. U.S. Oil and Gas Corp., 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

5. In light of the inherently deceptive nature of the counterfeiting business, and Defendants' blatant violation of the federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

**IV.   CONCLUSION**

For the foregoing reasons, it is ORDERED AND ADJUDGED that Plaintiff's *Ex Parte* Application (ECF No. 7) is GRANTED. It is further

ORDERED AND ADJUDGED that

1. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order are hereby temporarily restrained:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Philip Morris USA Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Philip Morris USA Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Philip Morris USA Marks, or any confusingly similar trademarks.

2. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue the use of the Philip Morris USA Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;[3]

3. Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue the use of the Philip Morris USA Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or

---

[3] See Schedule A of this Order.

cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

4. Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

5. The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

6. The Registrars and the top-level domain (TLD) Registries for the Subject Domain Names, within ten (10) days of receipt of this TRO, shall cause to be changed or change the registrar of record for the Subject Domain Names, excepting any such domain names which such Registries have been notified in writing by Plaintiff have been or will be dismissed from this action, to a holding account with the United States based Registrar, GoDaddy.com, Inc. Upon transfer of control over the Subject Domain Names into the holding account, GoDaddy.com, Inc. will hold the registrations for the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, GoDaddy.com, Inc. shall immediately update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which links the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where a copy of the Complaint, Summonses, Temporary Restraining Order, and other documents on file in this action are displayed. Alternatively, GoDaddy.com, Inc.

may institute a domain name forwarding which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL"), http://servingnotice.com/jiang/index.html, whereon a copy of the Complaint, Summonses, Temporary Restraining Order, and other documents on file in this action are displayed.  After GoDaddy.com, Inc. has effected this change the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the registrar or Defendants;

7. Plaintiff may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

8. Each Defendant shall preserve copies of all their computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of this Order;

9. Upon receipt of this Order, Western Union Financial Services, Inc. ("Western Union") shall divert all money transfers sent by United States consumers to: (1) Zhilin Jiang in Putian, China, with the date of birth and identification number provided by the recipient of MTCN 455-906-9491; (2) Haidong Huang in Putian, China, with the date of birth and identification number provided by the recipient of MTCN 853-673-9729; and (3) Haidong Huang in Putian, China, with the date of birth and identification number

provided by the recipient of MTCN 9464580813, and hold such transfers until it receives further direction from the Court;[4]

10. In the event any money transfers are diverted in accordance with Paragraph 9 of this Order, Western Union shall be permitted to inform consumers who may contact Western Union about the transfers that the transfers are being held pursuant to a Court Order in <u>Philip Morris USA Inc. v. Jiang</u>, entered by the United States District Court for the Southern District of Florida and that they may contact Plaintiff's counsel for additional information;

11. Western Union shall also, within five business days of receiving this Order, provide to Plaintiff's counsel records of all money transfers that have been paid to: (1) Zhilin Jiang in Putian, China, with the date of birth and identification number provided by the recipient of MTCN 455-906-9491; (2) Haidong Huang in Putian, China, with the date of birth and identification number provided by the recipient of MTCN 853-673-9729; and (3) Haidong Huang in Putian, China, with the date of birth and identification number provided by the recipient of MTCN 9464580813, as well as records of money transfers that have been diverted in accordance with Conclusion Paragraph 9 of this Order. For any transfers that have been diverted in accordance with this Order, Plaintiff's counsel will respond to any consumer inquiries and will provide notice of the Order and the disposition of the transfers to any affected consumer;

12. This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties, but under no circumstances shall this Temporary

---

[4] Western Union is licensed to do business in the State of Florida by the Florida Office of Financial Regulation and is therefore subject to personal jurisdiction in this Court.

Restraining Order remain in effect for more than fourteen (14) days from the date of this Order;

13. Pursuant to 15 U.S.C. § 1116(d)(5)(D), Plaintiff shall post a bond in the amount of One Hundred Thousand Dollars and Zero Cents ($100,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint. Plaintiff shall post the bond prior to requesting the Registry to transfer control of the Subject Domain Names;

14. A hearing is set before this Court in the United States Courthouse located at 400 North Miami Avenue, Miami, Florida 33128, Courtroom 13-1, on November 21, 2011, at 10:30am, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiff's requested preliminary injunction;

15. Plaintiff shall serve a copy of the *Ex Parte* Application for TRO and this Order on Defendants via their known e-mail addresses; specifically the e-mail addresses provided to the Registrars responsible for the Subject Domain Names: 1@qq.com, 1394376540@qq.com, 1664536152@qq.com, 1668132581@qq.com, 737561273@qq.com, contact@privacyprotect.org, and elicoco@qq.com; and the customer service e-mail addresses used to communicate with Plaintiff's investigator: mygodcigar@hotmail.com, and anniecig2011@hotmail.com.  In addition, Plaintiff shall post a copy of the Application for TRO and this Order on the website located at http://servingnotice.com/jiang/index.html, upon transfer of the Subject Domain Names into the holding account with GoDaddy.com, Inc., and such notice so given shall be deemed good and sufficient service thereof. Any response or opposition to Plaintiff's

Motion for Preliminary Injunction must be filed and served on Plaintiff's counsel forty-eight (48) hours prior to the hearing set for November 21, 2011, and filed with the Court, along with Proof of Service, on or before November 19, 2011. Plaintiff shall file any Reply Memorandum on or before November 20, 2011. The above dates may be revised by this Court or upon stipulation by all parties and approval of this Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d) and Fed. R. Civ. P. 65.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of November, 2011.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record

Case No. 1:11-cv-24049-KMM

# SCHEDULE A
## SUBJECT DOMAIN NAMES

1. cheapcigarettes-online.net
2. cheapmarlborocigarettes.org
3. cheappricecigarettes.com
4. cigarettesnewport.com
5. cigarettes-online.org
6. cigarettesonline.us
7. discountcamelcigarettes.com
8. discountscigarette.com
9. koolcigarettes.us
10. marlborocigarette.biz
11. marlborocigarettes.biz
12. marlboro-cigarettes.us
13. marlborocigarettescoupons.com
14. marlborocigarettesus.com
15. marlborogold.biz
16. marlboro-gold.biz
17. marlboro-gold.net
18. marlboro-gold.org
19. marlborogold.us
20. marlborogoldcigarettes.com
21. marlborolights.biz
22. marlboro-lights.biz
23. marlboro-lights.net
24. marlborolights.us
25. marlboro-lights.us
26. marlborored.org
27. marlbororedcigarettes.biz
28. marlbororedcigarettes.com
29. marlbororedcigarettes.net
30. marlbororedcigarettes.org
31. marlbororedcigarettes.us
32. marlborosale.com
33. marlboroskyline.biz
34. marlborowholesale.com
35. newport100s.biz
36. newport100s.com
37. newport100s.us
38. newportbox100s.biz
39. newportbox100s.com
40. newportbox100s.net
41. newportbox100s.org
42. newportbox100s.us
43. newportcigarette.net
44. newportcigaretteswebsite.biz
45. newportcigaretteswebsite.org
46. newportcigaretteswebsite.us
47. newportcigaretteswholesale.biz
48. newportcigaretteswholesale.com
49. newportcigaretteswholesale.us
50. newportmentholbox.biz
51. newportmentholbox.com
52. newportmentholbox.net
53. newportmentholbox.us
54. newportmentholcigarettes.com
55. newportregular.com
56. newportscigarettes.net
57. newportshort.com
58. uppermarlborocigarettes.com